IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

UNITED STATES OF AMERICA,

                        Plaintiff

v.

BRIAN DELZER and
JACOB STADFELD,

                        Defendants.

SECOND REPORT
AND RECOMMENDATION

08-cr-138-bbc

_____

REPORT

A federal grand jury has charged defendants Brian Delzer and Jacob Stadfeld in a one count indictment with conspiracy to distribute marijuana.[1]  Earlier in this case each defendant moved to dismiss the indictment because of his immunity agreement with the state; this court denied those motions, finding among other things that each defendant had breached his agreement.  Now before the court are the defendants' separate but similar motions to suppress the myriad self-inculpatory statements each of them made to local detectives pursuant to their now-voided immunity agreements.  *See* dkts. 145 (Stadfeld) and 158 (Delzer).  The government opposes both motions.  For the reasons stated below I am recommending that this court deny both motions to suppress statements.

Following a three day evidentiary hearing on the motions to dismiss, I found facts in a January 26, 2010 report and recommendation on defendants' motions to dismiss the indictment, *see* dkt. 112 at 3 - 34.  Judge Crabb adopted these facts in her April 28, 2010 order in which she

---

[1] Earlier this week in Case No. 10-cr-135-bbc, the grand jury indicted Stadfeld on fraud and perjury charges arising in part out of proceedings in the instant case, but this is irrelevant to analysis of the suppression motions.

denied both motions to dismiss, *see* dkt. 139. In the instant report and recommendation I adopt all of the previously-found facts and incorporate them by reference.

In its April 28, 2010 order, the court concluded that each defendant had breached his immunity agreement with the state and that neither defendant was entitled to dismissal under the doctrine of equitable immunity. *See* dkt. 139. The court found that Stadfeld was not challenging the finding in the report and recommendation that his statements had not been compelled in violation of the Fifth Amendment. *Id.* at 12. The court's order did not explicitly address the report and recommendation's finding that Delzer's statements had not been compelled (*see* dkt. 112 at 35 - 39), perhaps because Delzer, like Stadfeld, did not challenge it. In any event, the question whether either defendant's statements were admissible against him at trial in this federal prosecution was not before the court in the motions to dismiss. *See* dkt. 112 at 66. Even so, the facts found and the conclusions reached by the court in deciding the dismissal motions prefigure the defeat of the suppression motions.

Delzer argues this court should suppress his statements to the detectives because: he was compelled to incriminate himself by virtue of the testimonial subpoena served on him in the state's John Doe proceeding; he did not realize his agreement did not bind the federal government; his lawyers either stated or implied that he had complete immunity; he would not have made his statements if he had realized that he still faced possible criminal prosecution in federal court; and the breach of his immunity agreement does not prevent the court from suppressing his compelled statements. *See* dkt. 175. Stadfeld does not directly argue that his statements were compelled–an issue already decided against him in the court's dismissal order–but argues that he was denied his Sixth Amendment right to effective assistance of

counsel, which makes his statements involuntary. In other words, Stadfeld, like Delzer, argues that if he had known he faced possible federal prosecution, he never would have agreed to talk to the detectives. Stadfeld also argues that it would be fundamentally unfair to use against him statements that everyone promised him would never be used against him. *See* dkt. 178.

The government responds that: neither defendant was compelled to talk to the state; the defendants lost any protection provided by their agreements when they breached those agreements; the exclusionary rule does not protect against ineffective assistance of counsel; in any event, Stadfeld was not prejudiced by counsel's mistakes; Stadfeld's claimed reliance on advice of counsel was unreasonable; and there is no due process issue here. *See* dkts. 179 & 180. Each defendant takes issue with the government's assertions in a reply brief, *see* dkts. 181 (Delzer) and 182 (Stadfeld).

As for the compulsion arguments, I have little to add to my analysis of this issue in the first report and recommendation. There was no legal compulsion here. True, neither defendant voluntarily came forward to cooperate: both were drawn into the district attorney's office by a John Doe subpoena. But as discussed in the previous report and recommendation, in order for either defendant to have a valid claim that his testimony actually was compelled, he was required to play out that hand to the very last card by actually appearing before the John Doe proceeding and asserting his Fifth Amendment privilege. Neither defendant chose that route. Instead, each defendant accepted the assistant district attorney's offer to proffer informally to the detectives in exchange for a nonprosecution agreement. Having made that choice, the defendants cannot now argue that their statements were legally compelled.

Contrary to Delzer's primary argument, being forced by the government to choose between unpalatable options does not constitute coercion. *See United States v. Alexander,* 573 F.3d 465, 477-78 (7th Cir. 2009)(consent to search vs. warrant); *United States v. Miller*, 450 F.3d 270, 272-73 (7th Cir. 2006) (cooperation vs. arrest of family members). Legal voluntariness is not determined by what a suspect *wants* to do; a lot of rough contact is allowed before reaching the constitutional limits bounded by objectively unwarranted threats and false promises by the state. *See Miller*, 450 F.3d at 272-73; *United States v. Villalpando*, 588 F.3d 1124, 1128-29 (7th Cir. 2009). No one made any unwarranted threats to the defendants. Nor did anyone make any false promises to the defendants: although this may seem an overly-punctilious distinction to the defendants, the *state* is not prosecuting the defendants, the *federal* prosecutor is.[2]

Even so, it is pellucid that neither Delzer nor Stadfeld would have proffered to the state if either man had realized that he was unprotected from federal prosecution. Each defendant would have insisted on a global immunity agreement before talking, or he would have kept his mouth shut. So, is this a fundamentally unfair windfall to the federal prosecutor? Or is it just bad defense by the defendants and their attorneys? Regardless, does this distinction matter for suppression purposes?

From the government's perspective, this is an example of the court's observation in *Villalpando* that "unfortunately for [defendant], the devil is in the details." *Id.* at 1129. As the government points out, there was no misconduct here by any state or federal actor, a necessary

---

[2] And to recapitulate this court's previous finding, this was not a subterfuge by either sovereign. January 26, 2010 Rpt. & Rec., dkt. 112, at 39 - 41.

4

predicate for a finding of involuntariness. As the court stated in *Pole v. Randolph*, 570 F.3d 922 (7th Cir. 2009), a state habeas case,

> A defendant's mental state is not enough alone to render his confession involuntary for suppression purposes. Although mental condition is relevant to a defendant's susceptibility to coercion, the police interrogator must have committed wrongful acts in order for a confession to be suppressed as the product of coercion.
>
> *Id*. at 943 n.7, citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).

Put slightly differently,

> An incriminating statement is voluntary if it is the product of rational intellect and free will and not the result of physical abuse, psychological intimidation, or deceptive interrogation tactics that have overcome the defendant's free will.
>
> *Villalpando*, 588 F.3d at 1129, citation omitted.

Thus, a *false* promise by government agents is improper because it has the potential to make a decision to speak irrational by distorting the alternatives among which the suspect is being asked to choose. *Villalpando*, 588 F.3d at 1129. But there were no false promises here, only uninformed defense decisions based on two-dimensional advice from counsel. This would not appear to be a valid basis under *Connelly* to suppress a defendant's statements on the ground that they were involuntary.

But from the defendants' perspective, it would be fundamentally unfair to allow the government to convict them using statements they made as a result of their genuine belief that they were immune from any prosecution. There's at least some support for this position: the Court of Appeals for the Seventh Circuit has indicated–after *Connelly*–that in determining the voluntariness of a defendant's decision to speak, the government could be held to a promise it

5

did not actually make if the defendant genuinely believed that the government had made the promise and this belief was objectively reasonable. *See United States v. Cichon*, 48 F.3d 269, 272 (7th Cir. 1995); *United States v. Cahill*, 920 F.2d 421, 427 (7th Cir. 1990).[3]  Whether these observations in *Cichon* and *Cahill* have survived subsequent decisions such as *United States v. Kontny*, 238 F.3d 815, 819 (7th Cir. 2001) is debatable, but they've never been explicitly overruled.

This leads back to the advice-of-counsel question: can bad advice from counsel render a defendant's subjective belief on a legal point objectively reasonable?  One could make a case for "yes" or "no" answers to this question.  If the answer is "yes," and if *Cichon* and *Cahill* still have any weight, then the defendants might be able to skirt past the government's contention that the exclusionary rule is inapplicable to ineffective assistance of defense counsel.  *Cf. United States v. Morrison*, 449 U.S. 361, 365 (1981) (taint from a Sixth Amendment violation often can be neutralized by suppressing evidence rather than dismissing the indictment).[4]  In any event, it's prudent to examine the Sixth Amendment issue now, since it might resurface in §2255 *Strickland*[5] motions filed after any conviction.  *See, e.g., United States v. Parker*, 609 F.3d 891, 894-

---

[3] In neither *Cahill* nor *Cichon* did the court actually suppress evidence on this basis.  In *United States v. Shears*, 762 F.2d 397, 401-03 (4th Cir. 1985), cited in *Cahill*, 920 F.2d at 427, the court of appeals overturned the district court's suppression of defendant's statement to federal agents, stating in its analysis that some types of broken government promises might make a statement involuntary, and that the defendant's perception of what the agents promised him is an important factor in determining voluntariness.

[4] On the other hand, the Court in *Morrison* actually held that despite the government's "egregious" interference with the defendant's right to counsel, there was no effect of a constitutional dimension that justified interfering with the criminal proceedings.  Further, "the remedy in the criminal proceeding is limited to denying the prosecution the fruits of *its* transgression." 449 U.S. at 366-67, emphasis added.

[5]*Strickland v. Washington*, 466 U.S. 668 (1984).

95 (7th Cir. 2010)(defendant challenges adequacy of attorney's advice during plea negotiations). For either Delzer or Stadfeld to establish entitlement to any relief, each defendant would have to show that his lawyers' poor performance not only is a "but-for" cause of the complained-of result, but also deprived the defendant of some substantive or procedural right to which the law entitled him. *Id*. at 895.

Neither Delzer nor Stadfeld can make that showing. Here, as in *Parker*, each defendant "has only himself to blame" for the predicament in which he now finds himself. That's because Delzer and Stadfeld each breached their immunity agreements with the state by omitting or lying about material information. As a result, this court found that each defendant's immunity agreement is void. *See* Order, dkt. 139 at 20 - 23, 25-28; Rpt. & Rec., dkt. 112, at 46-65.

As this court previously found, and contrary to the defendants' most recent assertions to the contrary, even when taking into account the due process concerns attendant to plea negotiations and agreements, a nonprosecution agreement is a contract like any other. *Wilson v. Washington*, 138 F.3d 647, 652-53 (7th Cir. 1998). As the court observed in *Wilson*,

> Thus, regardless of what the State offered as its part of the deal, Wilson violated the agreement by lying to the grand jury. In the language of contract law, Wilson committed a material breach, and thus excused the State from performance. This case goes down on the simple grounds that Wilson broke his end of the bargain. He had two chances to tell the truth. Both times he choked on his own words, so to speak.

138 F.3d at 652-53.

To the same effect, in *United States v. Meyer*, 157 F.3d 1067 (7th Cir. 1998), the court held because the defendants breached their proffer agreements by providing materially false

information and withholding material information, the government could use their statements against them at trial. *Id.* at 1078-79.

Delzer argues that these "contract" cases don't adequately account for and refute his Fifth Amendment compulsion arguments. This is incorrect. As noted above, this court previously determined that Delzer was not compelled to testify: he chose to go with a proffer agreement rather than appear before the John Doe. As a result, his protection from prosecution and self-incrimination was pursuant to his deal with the state. Therefore, it is inapt for Delzer to analogize himself to a suspect who has been immunized under state or federal statute. Delzer had the right to a judicial determination of the claimed breach of his agreement and he got it. As this court noted in reaching its conclusion, Delzer only breached his agreement on one point, but that point was material. Now his protection is gone and his statements are admissible against him.

So too with Stadfeld, although he takes a different tack. Howsoever inadequate or incorrect the advice provided by his attorneys about the extent of his immunity agreement, the effects of this advice evanesces in the face of Stadfeld's repeated, brazen lies to the detectives. Blaming his previous lawyers for his current predicament is just another demonstration of the *chutzpah* that energizes Stadfeld like rocket fuel.[6]

Each defendant's breach vitiates his argument that if he had realized at the time that his state deal did not bind the feds, then he would not have agreed to cooperate. By breaking his full-and-truthful-disclosure promise to the state, each defendant exposed himself to the use of

---

[6] For instance, at the January 15, 2010 hearing on the government's motion to revoke Stadfeld's pretrial release, I found that Stadfeld had lied to his business clients, misled this court, and couldn't keep his story straight during his brief testimony. *See* Transcript, dkt. 111, at 83-84.

his statements against him in a state prosecution.[7] The distinction between that possibility and the federal prosecution that actually resulted is not so significant as to trigger fundamental fairness concerns over the use of the defendants' previously-immunized statements against them in this case. The equities–and perhaps the outcome–would have been different in the absence of these breaches, but that is not the situation presented here. Each defendant breached his immunity agreement with the state, leaving himself with no persuasive Sixth Amendment claim for suppression and no other protection against the federal government's use at trial of his self-incriminatory statements.

## RECOMMENDATION

Pursuant to 28 U.S.C. §636(b)(1)(B) and for the reasons stated above, I recommend that this court deny both pending motions to suppress statements.

Entered this 13th day of August, 2010.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

---

[7] Of course, a state court would have been the gatekeeper in that situation, but considering the betrayal and outrage voiced by the assistant district attorney and the detectives during their testimony at this court's evidentiary hearing, I have no doubt that they would have sought to prosecute Delzer and Stadfeld if the U.S. Attorney had not.