IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UNITED STATES OF AMERICA,

                Plaintiff,

      v.

JACOB STADFELD,

                Defendant.

OPINION AND ORDER

08-cr-138-bbc-02

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Defendant Jacob Stadfeld has filed a motion for a judgment of acquittal, renewing the motion he made at the end of the government's case, and a motion for a new trial. He contends that he should be acquitted because the evidence at trial was insufficient to allow the jury to find him guilty of conspiracy to distribute marijuana. In support of his motion for a new trial, he complains primarily of evidentiary rulings that allegedly denied him a fair trial.

After protracted pretrial proceedings, defendant went to trial on August 30, 2010. The government's witnesses included the case agent, Detective Shannan Morgan, and a number of defendant's alleged coconspirators, many of whom had pleaded guilty to similar charges and had been sentenced to prison terms. Defendant produced no evidence on his

1

own behalf and chose not to testify.  The jury found him guilty of conspiracy to distribute 1000 kilograms or more of marijuana.

## A. Renewed Motion for Judgment of Acquittal

Defendant's insufficiency of the evidence argument rests almost entirely on Detective Morgan's allegedly incredible testimony at trial.  Defendant maintains that Morgan's credibility was undercut when she changed her testimony about destroying the notes she made before she prepared her reports of her various interviews with defendant.  At one point, she said she had destroyed the notes, but she admitted at trial that she still retained some of them.  Assuming for the sake of argument that Morgan lied about her notes when first asked about them, her doing so does not make all of her testimony incredible.  The jury is instructed in every case how to evaluate the testimony of any witness.  If it finds that a witness has given false testimony about any important matter, it may decide how much of the testimony of that witness to believe.  It may believe some of it, none of it or all of it.

The notes were not an "important matter."  In fact, Morgan had no obligation to produce them for defendant.  What she was required to produce, and did, were the reports that she prepared from those notes.  That she was mistaken about the existence of the notes (or even if she lied about them) does not make her testimony so unreliable that no reasonable jury could have believed any of it.  In fact, the jury found Detective Morgan to

be credible, after hearing all of her testimony.  Its verdict is entitled to great weight.   I cannot say that the testimony was either implausible on its face or that Morgan could not have witnessed the matters about which she testified.

Morgan was present at the interviews with defendant.  She heard him make admissions to the effect that he knew about the marijuana conspiracy in detail, that he was selling marijuana himself and that his source was Amos Mortier, who fronted the drug to him from at least 2000 into 2004.  The details that defendant gave Morgan and other detectives included the manner in which marijuana was delivered to Madison, how it was packaged, the quantities being transported to Madison and the path of the marijuana (from Canada through New York).  Defendant told the detectives that he knew Mortier was also selling to Brent Delzer and Jacob Falkner.

The timing makes it clear that Morgan did not use information she obtained from the coconspirators to create a false report of defendant's admissions.  She met with defendant in 2005 and prepared her reports at that time.  She would not have known about the conspiracy in 2005 from anyone other than defendant (and Brent Delzer, a coconspirator interviewed around the same time as defendant and later charged in the same indictment with defendant).  The other coconspirators were not arrested and debriefed until late 2006 and early 2007.

Defendant challenges the credibility of the coconspirators who testified against him,

3

but that challenge is secondary to his challenge to Morgan's testimony. He realizes that if Morgan's testimony is considered, he has no chance of an acquittal.

Although I have found no merit to defendant's attack on Morgan's credibility, I will address defendant's challenge to the credibility of the testimony of other members of the conspiracy. He says that their testimony is all hearsay, undercut by their motives to lie because of their plea agreements with the government. First, the testimony was not all hearsay. Many witnesses testified about various details of the conspiracy of which they had firsthand knowledge. Their testimony confirmed important details that Morgan had obtained from defendant.

The jury knew that the testifying coconspirators had received certain benefits and in some cases had a motive to curry favor with the government in the hopes that their sentences would be reduced. It could have disregarded the testimony of these witnesses, but chose not to. This was not an irrational decision, given the corroboration of much of the evidence by witnesses who had no motive to shade their testimony, either because they were facing any prison time or because they had completed their terms of incarceration.

Defendant's motion for a judgment of acquittal will be denied for his failure to show that no jury could have relied reasonably on the trial testimony of Detective Morgan and the coconspirator witnesses to find him guilty.

4

B. <u>Motion for New Trial</u>

In support of his motion for a new trial, defendant argues that the court made a number of erroneous evidentiary rulings that denied him a fair trial. In order, they begin with the ruling that defendant could not introduce evidence of the disappearance of Amos Mortier, the Madison hub of the marijuana conspiracy. Prior to trial, defendant had asked for a ruling that evidence of the disappearance be kept out of the trial; that motion was granted.

At the final pretrial conference, defendant changed his tactics and sought permission to introduce this evidence, apparently in an effort to show two things: (1) Mortier's disappearance supplied the various coconspirator witnesses both a motive to come forward in the first place and a reason for later changing their statements to law enforcement about defendant; and (2) defendant gave the statements he did to Detective Morgan only because he had been promised immunity from prosecution. (The exact nature of that immunity agreement, if one existed, was the subject of a lengthy report and recommendation by the magistrate judge. Dkt. #112.) The first of these desired showings is a little hard to understand. Apparently, defendant thinks that if the jury had known about the investigation into Mortier's disappearance, it would have believed that the alleged coconspirators wanted to drag defendant into the drug conspiracy to keep the police from suspecting that they had any involvement in the disappearance. In other words, if the coconspirators told the police

5

everything they knew, or made up stories about a drug conspiracy involving defendant, the police would not investigate their possible roles in the disappearance. This is a strange theory. If the conspirators were supplying truthful information about the conspiracy—for whatever reason—their evidence was relevant. If they were lying, why would they have thought that false information about a drug conspiracy would protect them from a missing persons investigation? Even if the information was intended to cast suspicion on defendant and away from themselves, it is likely that any mention of a drug conspiracy involving Amos Mortier would have suggested all sorts of motives for causing him to disappear, whether because he reneged on a drug deal, shorted another conspirator or threatened to turn in members of the conspiracy.

It is more likely that what defendant really wanted was to elicit sympathy from the jury if it learned that he had talked at length about his involvement in the drug conspiracy only because he believed he had been promised immunity from prosecution for any crime relating to drug distribution. The desire to obtain a verdict of not guilty based on sympathy to the defendant or antipathy to the government is not a legitimate reason for introducing otherwise irrelevant evidence. For the same reason, defendant had no legitimate ground for introducing evidence of the immunity agreement he allegedly had with the state.

Defendant complains about the court's denial of his request to go through Detective Morgan's notes that she used in writing her interview reports. He did not make that request

6

until trial was in process and he was unable to articulate a specific reason for the review, such as evidence that the notes contradicted information in the reports.  In the absence of any good reason for allowing defendant to sift through the notes, I denied his request. Defendant has not shown any reason why this ruling was wrong.  In fact, he has has not shown any statutory or constitutional basis for production of the notes by the government.  He had the interview reports themselves for impeachment purposes.

Defendant believes it was error to bar him from questioning Detective Morgan about his statement to her to the effect that he sold marijuana but he did so as an independent contractor, but the statement was inadmissible hearsay.  Defendant Morgan had no independent knowledge of defendant's arrangements with his drug sources.

Defendant contends that he was illegally denied his right to testify when the court ruled that the government could introduce evidence of pending charges of perjury and fraud against him if he did testify.  These matters were admissible under Fed. R. Evid. 608(b) because they were prior acts of untruthfulness.  Defendant considered the risks and benefits and assured the court that he was making the decision not to testify on his own and that it was a knowing and voluntary decision.

At trial, I allowed a limited amount of testimony from witnesses who purchased drugs from defendant before the start of the conspiracy at issue.  This evidence was permitted to show that defendant had the knowledge and intent to engage in drug distribution and the

7

jury was instructed to consider it only for that purpose.

Defendant contends that evidence of statements made by Mortier to coconspirator Reed Rogala was allowed into evidence improperly because the statements were made to Rogala after he was no long a member of the conspiracy.  It is true that Rogala stopped distributing marijuana in September 2003, but he traveled to Madison in November 2004 to collect debts left over from prior deliveries.  Earlier, in the spring of 2004, he inspected a load intended for Mortier when it was unloaded at another conspirator's residence.  Because he was still a member of the conspiracy and continuing to further its goals, his statements in the fall of 2004 were admissible under the coconspirator exception to the hearsay rule.  Fed. R. Evid. § 801(d)(2)(E).  Defendant's argument to the contrary is misguided.

Finally, defendant challenges the sufficiency of the evidence, although he must know that this is a quixotic venture after a jury has returned a verdict of guilty.  As he did in support of his motion for a judgment of acquittal, he contends that the only evidence linking him to the conspiracy is that of Detective Morgan and her credibility is suspect.  He maintains that the testimony of the coconspirators is all hearsay, because they never heard from defendant himself that he was buying drugs from Mortier and distributing them.  All of their evidence on that point came from Mortier.  In fact, the coconspirators had firsthand knowledge about many different details that linked them to defendant:  the police report

8

about the alleged drug ripoff at Fred Schubert's residence; and, as I explained above, information about the way the marijuana shipments came into Madison, which was known to both defendant and the coconspirators, how money was handled and the way in which the marijuana was packaged, as well as how the trail of moldy marijuana ran though the entire case, tying defendant to the conspiracy. (One of the deliveries that Rogala arranged arrived in bad condition: the marijuana had been damp when it left New York and was kept in a warm car trunk. On arrival, Mortier had to toss some as completely unsaleable, sold some at a special price and fronted some more to defendant. Defendant stored the marijuana with Fred Schubert and stole it from Schubert's residence while Schubert was at work. Later defendant sold some of the moldy weed at a discount to John Brubaker, a former customer who had resumed dealing.)

I conclude that defendant has failed to show any ground to support the granting of his motion for a new trial.

ORDER

IT IS ORDERED that defendant Jacob Stadfeld's renewed motion for a judgment

of acquittal and his motion for a new trial are DENIED.

Entered this 21st day of October, 2010.

BY THE COURT:
/s/
BARBARA B. CRABB
District Judge